```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION
```

DONNA CLICK-HILLIARD,           )
                                )
         Plaintiff,             )
                                )
    v.                          )      No. 4:11 CV 1556 DDN
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
         Defendant.             )

## MEMORANDUM

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Donna Click-Hilliard for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

## I. BACKGROUND

Plaintiff, who was born in 1970, filed her application on August 25, 2008, alleging she was disabled beginning December 31, 2004, due to diabetes mellitus with neuropathy in her feet and legs, depression, ketoacidosis,[1] and pancreatitis or inflammation of the pancreas. (Tr. 9, 87-96, 114.) Her claims were denied initially, on reconsideration, and after a hearing before an ALJ. (Tr. 9-16.) On July 29, 2011, the Appeals Council denied her request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1] A buildup of ketones in the blood due to the breakdown of stored fats for energy; a complication of diabetes mellitus. Untreated, it can lead to coma and death. Stedman's Medical Dictionary 1027 (28th ed. 2006).

## II. MEDICAL HISTORY

On May 17, 2006, plaintiff was admitted to the Intensive Care Unit (ICU) at Missouri Baptist Medical Center in Sullivan, Missouri, with complaints of abdominal pain. She remained hospitalized there from May 17-27, 2006. She had a 13-year history of diabetes and was insulin dependent for 11 years. Her diabetes and hypertriglyceridemia, or elevated triglyceride concentration in the blood, were the underlying cause of the pancreatitis. She received a blood transfusion, and was started on insulin for diabetic ketoacidosis and Prozac for depression. Plaintiff reported she had a family emergency and discharged herself against the advice of her doctors. Her discharge diagnoses were acute pancreatitis[2]; ketoacidosis; anemia; acute renal failure; leukocytosis or raised white blood cell count; hypertension; and depression. (Tr. 198-200.)

The endocrinology assessment states "likely we will need to re-emphasize lessons on diet for diabetes and for hypertriglyceridemia. This clearly is a huge risk for her right now and if her blood sugars remain poorly controlled, triglycerides will likely remain high as well as risk from acute pancreatitis and atherosclerotic vascular disease." (Tr. 211.)

Plaintiff was seen at Missouri Baptist Hospital on June 7, 2006 for follow-up. She reported that she felt better overall, and her doctor reported that she seemed to be doing reasonably well. (Tr. 275-76.)

Plaintiff was seen by her primary care physician, Felipe Eljaiek, M.D., at Riverside Medical Clinic, on March 9, 2007 for prescription refills. She reported having a significant amount of family problems. She was diagnosed with depression, dysmetabolic syndrome,[3] and

---

[2]Acute hemorrhagic pancreatitis is an acute inflammation of the pancreas accompanied by the formation of necrotic areas and hemorrhage into the substance of the gland; clinically marked by sudden severe abdominal pain, nausea, fever, and leukocytosis; areas of fat necrosis are present on the surface of the pancreas and in the omentum because of the action of the escaped pancreatic enzyme. Stedman's at 1410.

[3]A group of metabolic risk factors linked to insulin resistance and associated with increased risk of cardiovascular disease. Stedman's at 1905.

insulin-dependent diabetes. (Tr. 508.) She saw Dr. Eljaiek again three days later with complaints of abdominal pain and dysuria or painful urination. She was diagnosed with hyperlipidemia,[4] a urinary tract infection, dysmetabolic syndrome, uncontrolled insulin-dependent diabetes, and obesity. Dr. Eljaiek instructed her to lose weight and exercise. He noted, "We had a long discussion with her husband to see if that could help with decrease in the amount of stress in her life." (Tr. 506-07.)

On April 28, 2007, plaintiff was seen in the ER of Missouri Baptist Hospital with generalized achiness and weakness. "According to the records, she has not been taking her insulin to control her blood sugar for the past 4 weeks. She just stopped taking her medicine. She has a significant amount of family issues and she has stated at some point that she does not think life is worth living. She had a same event about a year ago where she was extremely sick and it took a lot of effort to turn her around secondary to diabetic ketoacidosis along with severe pancreatitis." (Tr. 324.) She was ordered to receive no food or drink by mouth. She was intubated with total parenteral nutrition (TPN), which is maintained entirely by central intravenous injection or other nongastrointestinal route. Her mortality was over 50% at that point. (Tr. 308, 325-26.)

Missouri Baptist Hospital records show that on May 2, 2007, plaintiff still had abdominal pain, nausea, and vomiting caused by pancreatitis. By May 3, 2007, she was still having a difficult time controlling her blood sugar. She was seen again May 8, 2007 and diagnosed with pancreatitis, electrolyte imbalance, anemia, nausea, and vomiting. (Tr. 299, 306-07.) On May 17, 2007, she was released with a catheter for home TPN.

On May 22, 2007, plaintiff was admitted to the ER of Missouri Baptist Hospital with a fever, vomiting, myalgia or muscle pain, and anxiety. Her diagnosis was chronic pancreatitis. (Tr. 263-64.) She was transferred to Barnes Jewish Hospital ICU and was hospitalized there from

---

[4]Elevated levels of lipids in the blood plasma. Stedman's at 922.

May 22-30, 2007.  Her diagnoses were (catheter) line sepsis[5] caused by a staph skin infection; thrombocytopenia[6] caused by heparin, an anticoagulant; diabetes mellitus; and chronic anemia.  (Tr. 344.) Plaintiff saw Dr. Eljaiek June 4 and 14 for follow up.  (Tr. 504-05.)

On October 10, 2007, plaintiff was admitted to Missouri Baptist Hospital with complaints of abdominal pain, nausea, and vomiting.  A CT scan showed severe changes of pancreatitis which were more severe than an earlier May 16 study.  Plaintiff reported a significant amount of stress in her life.  Her husband reported she had been taking only a partial dose of her insulin.  (Tr. 291-95.)

Plaintiff was transferred to Barnes Jewish Hospital where she was hospitalized from October 12-19, 2007.  She reported her episode of pancreatitis started after she stopped taking all her medications, including her insulin, pancreatic enzymes, and triglyceride treating agents, approximately 2 to 3 months ago earlier because of her depression.  A psychiatric consultation showed moderate to severe depression.  Plaintiff said that her mood had improved by the time of her discharge.  Her discharge summary states state psychiatry was recommended, and that she might want to consider undergoing electroconvulsive therapy which has been shown to have a very dramatic improvement for many of these patients.  Plaintiff, however, declined. She agreed to follow-up in psychiatry. (Tr. 339-45.)  She saw Dr. Eljaiek on November 1, 2007 and January 21, 2008 for follow up.  (Tr. 502-03.)

On February 12, 2008, plaintiff was seen in the ER at Missouri Baptist Hospital with abdominal pain, nausea, and vomiting.  (Tr. 334-38.)  The ER Clinical Documentation Form states she had been non-compliant with her medications.  Plaintiff's husband reported that she had not taken any of her medication in over two weeks.  (Tr. 249.)  She was transferred to Barnes Jewish Hospital where she was hospitalized from February 12 to March 7, 2008.

---

[5]Sepsis is the presence of various pathogenic organisms, or their toxins, in the blood or tissues.  Stedman's at 1749.

[6]A condition in which an abnormally small number of platelets is present in the circulating blood.  Stedman's at 1984.

The Admission Summary from Barnes Jewish Hospital states that she had been off several of her medications, including insulin, for three to four days, as well as her antidepressant, for three to four weeks, because she felt depressed. (Tr. 334-35.) "According to the family, the patient gets depressed and there is considerable strife between the patient and her husband and the patient will oftentimes refuse to take her medications, sending her into diabetic ketoacidosis, exacerbating her chronic and recurrent pancreatitis." (Tr. 328.)

Endocrinology Consultation notes state that "up until her hospitalization [plaintiff] reports that she has not been compliant with her insulin for three to four weeks. When asked to explain why, the patient reports that she did not feel like taking her insulin." (Tr. 331.) "For the patients' depression, it was noted that the patient is not taking her medications, and had suggested psychiatry consult." (Id.) She was discharged in stable condition. She saw Dr. Eljaiek for follow-up from March through July 2009. (Tr. 497, 499-500, 529, 559.)

Plaintiff was seen at the State of Missouri Family Support Division where she was diagnosed with chronic pancreatitis, insulin-dependent diabetes mellitus, neuropathy, and obesity. A report dated October 9, 2008, Dr. Musa Modad opined that plaintiff had a medical condition which prevented her from engaging in employment or gainful activity for 6-12 months. (Tr. 526-27.)

On January 2, 2009, Dr. Eljaiek completed a physical RFC questionnaire. Dr. Eljaiek diagnosed plaintiff with insulin-dependent diabetes mellitus, neuropathy, chronic pancreatitis, deep vein thrombosis, metabolic syndrome, anxiety, and depression. Dr. Eljaiek opined that plaintiff's attention and concentration would frequently be interfered with, even to perform simple work tasks, and that plaintiff was incapable of even low stress jobs. Plaintiff was able to sit for 30 minutes at a time and stand for 10 minutes at a time. She would need periods of walking around during an 8-hour workday every 30 minutes for 5 minutes at a time, and a position which allowed shifting at will from sitting, standing, or walking. Plaintiff could sit for at least 6 hours, and stand or walk for less than 2. Plaintiff could lift 10 pounds. Plaintiff was not to stoop or bend, could rarely climb stairs, and was

never to crouch, squat, or climb ladders. Dr. Eljaiek indicated plaintiff would miss more than 4 days of work per month and that the restrictions had been placed as of January 2004. (Tr. 548-551.)

**Testimony at the Hearing**

On November 3, 2009, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 20-36.) She was 39 years old and single. She and her seven-year-old daughter live with her mother. She was 5 feet 6 inches tall and weighed 270 pounds at the time of the hearing. She completed high school and has past relevant work as a transportation driver, nurse's aide, and personal assistant. (Tr. 20-26.)

The diabetic neuropathy in her lower legs and feet has worsened. Her feet swell and she has tingling and pain. She has used an insulin pump for the past six months and measures her sugar count every day. She relieves the pain by elevating her legs by sitting in a recliner with a pillow under her legs. She has pain when she walks and has difficulty walking. She hates to drive because she feels insecure due to the pain and numbness in her feet and because she sometimes cannot feel the gas pedal. She was hospitalized with pancreatitis about a year ago and has not had any attacks since then. She has depression and sits in her room a lot with the door shut and cries a lot. She has not seen a therapist for her depression. (Tr. 29-35.)

### III. DECISION OF THE ALJ

On March 10, 2010, the ALJ issued an unfavorable decision. (Tr. 9-16.) He noted that, although plaintiff had alleged an onset date in 2004, a prior decision of the Commissioner had found her not disabled through November 16, 2006. Therefore, plaintiff's relevant period began November 17, 2006. Plaintiff's insured status under the Act expired September 30, 2009, marking the end of the relevant period. (Tr. 9.)

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity from November 17, 2006 through September 30, 2009, her date last insured. At Step Two, the ALJ found that plaintiff had severe impairments of diabetes mellitus with neuropathy and obesity. At Step Three, the ALJ found that plaintiff did not suffer from an

impairment or combination of impairments of a severity that meets or medically equals the required severity of a listing. (Tr. 11.)

The ALJ found that, if plaintiff would take her medications as prescribed, she would still have some restrictions on her ability to work, but she would not be totally unable to work. (Tr. 14.) The ALJ also found that plaintiff's failure to take her prescribed medications reduced the credibility of her statements about the severity of her symptoms. (Tr. 15.)

The ALJ found that plaintiff had the RFC to perform the full range of "sedentary" work. At Step Four, that ALJ found that plaintiff's RFC prevented her from returning to her past relevant work. (Tr. 14.) At Step Five, the ALJ determined, using the medical vocational guidelines, that there were other jobs in significant numbers in the national economy that plaintiff could perform. The ALJ therefore found plaintiff was not disabled under the Act. (Tr. 16.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-

Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). Id. The claimant bears the burden of demonstrating she is no longer able to return to his PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

### V. DISCUSSION

Plaintiff argues, first, that the ALJ's RFC finding is not supported by substantial evidence. She argues the ALJ erred in failing to cite any medical record evidence demonstrating that she would improve with compliance. She argues there is no record evidence her condition would actually improve and allow her the ability to work with substantial compliance.

Plaintiff argues, second, that the ALJ erred in determining her RFC and in not using Vocational Expert (VE) testimony.

### A. Noncompliance with prescribed treatment

As to plaintiff's first argument, the ALJ need not find that compliance with her prescribed medications and other treatment would render her able to work, for her noncompliance to be relevant. In a recent Eighth Circuit case, the claimant was noncompliant with her doctor's instructions to take medications, to follow a prescribed diet, and to abstain from drugs and alcohol. See Wildman v. Astrue, 596 F.3d

959, 968 (8th Cir. 2010). The court found these reasons, along with claimant's poor work history and the absence of objective evidence, were valid reasons for discrediting her subjective complaints. The claimant suffered from chronic pancreatitis but failed to follow doctors' orders, i.e., she continued to drink alcohol, and failed to fill her prescriptions and follow a prescribed diet. Her doctor repeatedly attributed her symptoms to her noncompliance. The Eighth Circuit held that the ALJ had properly cited the claimant's noncompliance in assessing her treating physician's opinion, as well as the claimant's credibility. The court also noted that the claimant's abdominal pain was "under fairly good control" when she was complaint. Id. at 965.

Likewise, in this case, plaintiff had three major hospitalizations during the relevant period, all of which were attributed to her medical noncompliance. The record evidence shows that in addition to plaintiff's noncompliance with her diabetes treatment and failing to take her insulin, she also stopped taking her depression medication. (Tr. 340.) Plaintiff improved and stabilized when she was given insulin and a proper diet, and her depression improved with medication. (Tr. 339, 342.)

The record evidence also shows plaintiff failed to follow her doctors' instructions to exercise and lose weight. However, the ALJ need not find that weight loss would have restored plaintiff's ability to work. See Meeks v. Apfel, 993 F. Supp 1265, 1276 (W.D. Mo. 1997) (ALJ justified in finding claimant was not credible where he repeatedly ignored directions to lose weight, stop smoking, and begin an exercise program). The undersigned concludes that it was also reasonable for the ALJ to cite plaintiff's failure to lose weight.

The court disagrees with plaintiff's argument that her depression prevented her from complying with her doctors' orders. There is no record evidence that doctors attributed plaintiff's depression to her noncompliance. The record evidence shows that her noncompliance was usually related to conflict with her husband and a stressful home life. Further, none of her doctors suggested that her depression rendered her incapable of understanding the implications of her noncompliance. Cf., Wildman 596 F.3d at 966 (no evidence "expressly linking" depression and

noncompliance); Pate-Fires, 564 F.3d 945-47 (noncompliance with medications was a manifestation of schizophrenic disorder).

Plaintiff also argues the ALJ should have adopted the RFC provided by Dr. Eljaiek. The court disagrees. An ALJ is generally obligated to give controlling weight to a treating physician's medical opinions that are supported by the record). Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). However, an ALJ may reject the opinion of any medical expert that is inconsistent with the medical record as a whole. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). Here, the ALJ noted that Dr. Eljaiek's suggested limitations were inconsistent with his own treatment notes. (Tr. 14.) Dr. Eljaiek indicated plaintiff had neuropathic pain, sensory loss, and leg swelling. However, none of his treating records mentioned any of those symptoms. For example, in early April 2009, plaintiff complained of leg swelling, even though the doctor did not see any clinical swelling. (Tr. 562.) Dr. Eljaiek consistently noted that plaintiff did not have edema, at least during periods when she was not in the hospital. (Tr. 498-99, 502-03, 506, 508, 529, 559-63, 566-67.) Likewise, the doctor's form noted plaintiff had "daily neuropathic pain" from diabetes, but his treatment notes did not report serious neurological problems. Moreover, when plaintiff complained of neuropathic-type pain, Dr. Eljaiek noted no clinical signs of pain, or motor or sensory deficits. (Tr. 560, 562, 565-67.)

Moreover, Dr. Eljaiek never instructed plaintiff to limit her activities. Instead, he instructed her repeatedly to lose weight, exercise, and comply with a diabetic diet. (Tr. 498, 501, 529, 558-59, 561-64.) Cf. Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (treating physician discredited because neither he nor any other doctor restricted claimant's activities, and one doctor advised claimant to engage in regular aerobic exercise). Finally, in Wildman, Dr. Eljaiek's statement does not acknowledge plaintiff's noncompliance, even though it can be inferred. Wildman, 596 F.3d at 964-66; cf. Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (ALJ did not err in considering treating physician's failure to account for claimant's noncompliance in light of claimant's failure to attend physical therapy, stop smoking, and follow exercise and dietary plans). The court concludes that the ALJ here

properly noted that Dr. Eljaiek's opinion was inconsistent with his own treatment notes, and therefore properly discredited his opinion. See 20 C.F.R. § 404.1527(d)(2) (2011)(treating physician's opinion must be supported by credible and persuasive evidence).

Plaintiff also argues the ALJ should have given more deference to the state of Missouri's finding that she was disabled under state law. Plaintiff is incorrect. State disability assessments are not binding on the Social Security Administration. See 20 C.F.R. § 404.1504 (2011); Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (whether a claimant is disabled under state law is not binding on the Commissioner of Social Security). It was therefore sufficient that the ALJ acknowledged the state disability finding even though not binding. (Tr. 14.)

**B.   Residual Functional Capacity (RFC)**

Plaintiff argues that there was insufficient evidence supporting the ALJ's RFC determination. RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 404.1545(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704.

The ALJ here thoroughly reviewed plaintiff's medical history, including evidence of noncompliance, and explained why he could not defer to Dr. Eljaiek's opinion. The ALJ noted plaintiff's recurrent pancreatitis and related health issues were nearly all caused by her noncompliance. The court therefore concludes the ALJ's credibility assessment and RFC determination are supported by substantial evidence on the record as a whole.

## C. Vocational Expert (VE) Testimony

Plaintiff also argues the ALJ erred in not using VE testimony because she has significant non-exertional impairments. The court disagrees.

The ALJ determined plaintiff's RFC, finding that plaintiff retained the ability to perform the full range of sedentary work, which precludes prolonged walking or standing and lifting in excess of ten pounds. At Step Four, based on plaintiff's RFC, the ALJ determined plaintiff was unable to return to her past relevant work. (Tr. 14-15.) At Step Five, the burden then shifted to the Commissioner to produce evidence of some other type of substantial gainful employment plaintiff could perform given her RFC. See Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); see also 20 C.F.R. § 404.1520(f). To satisfy this burden, defendant must normally elicit testimony from a VE. Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001). A narrow exception to this rule exists when a claimant is limited to exclusively exertional impairments. Haley v. Massanari, 258 F.3d 742, 747-48 (8th Cir. 2001). In such a case, defendant may rely upon the Medical-Vocational Rules, or the Grids, a series of tables provided in 20 C.F.R. Appendix 2 to Subpart P of Part 404, which find whether or not the claimant is disabled.

Plaintiff contends her RFC should have included nonexertional limitations based on Dr. Eljaiek's opinion. However, as discussed above, the ALJ rejected Dr. Eljaiek's opinion and found no reason to incorporate his suggested limitations in plaintiff's RFC. In addition, there is no record evidence plaintiff had any work-related mental restrictions. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (mental impairments did not prevent claimant from engaging in substantial activities of daily living: absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in mental capabilities disfavors a finding of disability). The undersigned concludes the ALJ did not err in not calling a VE to testify.

## III. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence in the record as a whole

and is consistent with the applicable law.  The decision of the Commissioner of Social Security is affirmed.

An appropriate Judgment Order is issued herewith.


                                                  /S/   David D. Noce
                                     **UNITED STATES MAGISTRATE JUDGE**


Signed on June 4, 2012.